J-S07016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.K.S., A MINOR CHILD<br>NO. 53-OC-2015 | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| IN RE: D.B.S., A MINOR CHILD<br>NO. 54-OC-2015 | |
| APPEAL OF: N.D.S., FATHER | |
| | No. 1407 MDA 2015 |

Appeal from the Order Entered July 28, 2015
In the Court of Common Pleas of Columbia County
Orphans' Court at No(s): 53-OC-2015
54-OC-2015

BEFORE: BOWES, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.: **FILED FEBRUARY 09, 2016**

N.D.S. ("Father") appeals from the orders entered in the Court of Common Pleas of Columbia County on July 28, 2015, involuntarily terminating his parental rights to his daughters, A.K.S., born in April of 2009, and D.B.S., born in February of 2008 (collectively, "the Children"). Upon careful review, we affirm.[1]

---

[*] Former Justice specially assigned to the Superior Court.

[1] The parental rights of the Children's mother, D.F. ("Mother"), were involuntarily terminated by the same order. Mother did not file a notice of appeal, and she is not a party to this appeal.

We summarize the factual and procedural history as follows. On August 26, 2010, the Children, then ages one and two, were placed in the care and custody of Columbia County Children and Youth Services ("CYS") due to a referral that Father and Mother were arrested for a crime involving retail theft, and that they had tested positive for heroin and oxycodone.[2] N.T., 8/8/14, at 12. In addition, the Children were removed from their parents' care because of unstable housing and employment issues. N.T., 5/28/15, at 31.

CYS established a permanency goal of reunification, and set forth the following Family Service Plan ("FSP") goals for Father: obtain a mental health evaluation and follow all recommendations; obtain stable housing; address illegal drug concerns and participate in random drug testing; cooperate with all services; and remain free from criminal activities. N.T., 8/8/14, at 15-19, CYS Exhibits #5, 6; N.T., 5/28/15, at 40.

By May of 2012, Father was residing with the Children's paternal grandfather, and Father was having unsupervised visits with them at his home. N.T., 8/8/14, at 18. At that point, CYS was "discussing return home [of the Children] to [F]ather." *Id.*

Father testified that he relapsed with respect to illegal drugs on July 20, 2012, which resulted in the drug-related death of an individual the same

---

[2] Father testified that he was incarcerated from October 15, 2010, to September 27, 2011. N.T., 5/28/15, at 70.

day.  N.T., 5/28/15, at 52, 77; *Commonwealth v. [N.D.S.]*, 120 A.3d 390 (Pa. Super. 2015) (unpublished memorandum).  Father pleaded guilty to the charges of possession with intent to deliver and involuntary manslaughter. *Commonwealth v. [N.D.S.]*, *supra* at [1].[3]  On July 25, 2012, Father was incarcerated at the State Correctional Institution ("SCI") Retreat, where he remained at the time of the subject proceedings.  N.T., 5/28/15, at 50.

On March 27, 2015, CYS filed petitions for the involuntary termination of Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (5), (8), and (b).  A hearing was held on March 28, 2015, and July 15, 2015.  CYS presented the testimony of its caseworkers, Heather Getkin, Brittany Foulds, and Kerri Shaylor.  Father testified on his own

_____

[3] Father appealed from the judgment of sentence, and this Court affirmed. In our disposition, we stated:

> [Father] was sentenced on the charge of [p]ossession with [i]ntent to [d]eliver to a period of incarceration of not less than 27 months nor more than 54 to be consecutive to a sentence he was presently serving imposed by the Court of Common Pleas of Snyder County.  He was sentenced on the charge of [i]nvoluntary [m]anslaughter to a period of incarceration of not less than 27 months nor more than 54 months to be consecutive to the sentence imposed on the [p]ossession.

*Commonwealth v. [N.D.S.]*, *supra* at [1-2] (internal quotes and citations omitted).

behalf. In addition, the orphans' court incorporated the record from the goal change hearing on August 8, 2014.[4] N.T., 5/28/15, at 3-6.

By orders dated July 27, 2015, and entered on July 28, 2015, the orphans' court involuntarily terminated Father's and Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b). On August 12, 2015, Father timely filed a notice of appeal. On August 14, 2015, Father filed a concise statement of errors complained of on appeal.[5, 6] On August 24, 2015, the orphans' court issued its Rule 1925(a) opinion in which it incorporated by reference its opinion accompanying the subject orders.

---

[4] By orders dated August 8, 2014, the orphans' court changed the Children's goal to adoption. The goal change hearing and the termination hearing were presided over by the Honorable Gary E. Norton.

[5] We note that the orphans' court entered separate orders terminating Father's parental rights to the Children. Father improperly filed only one notice of appeal and one concise statement of errors complained of on appeal from the orders. *See* Pa.R.A.P. 341, Note ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). However, because Father's arguments on appeal are identical to each child, we discern no prejudice arising from his procedural misstep. Therefore, we decline to quash Father's appeal.

[6] Father did not file the concise statement concurrently with the notice of appeal in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). Because no party claims prejudice as a result of Father's procedural violation, we do not quash or dismiss his appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009).

- 4 -

On appeal, Father presents the following issues for our review:

I.      Whether the [orphans'] court erred in finding that [CYS] sustained its burden of proof as to 23 Pa.C.S.[A.] § 2511(a)[?]

II.     Whether the [orphans'] court erred in failing to consider the effect of the termination on the Children and whether the termination was in the Children's best interest[?]

Father's brief at 4.

We consider Father's issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if

- 5 -

the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

This Court need only agree with any one subsection of Section 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Instantly, we conclude the orphans' court properly terminated Father's parental rights pursuant to Section 2511(a)(8) and (b), which provide as follows:

**(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

This Court has stated:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275–1276 (Pa. Super. 2003); 23 Pa.C.S.A. § 2511(a)(8).

"Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic period. *Id.* The "relevant inquiry in this regard is whether the conditions that led to

removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009). This Court has acknowledged:

> [T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.

***In re J.F.M.***, 71 A.3d 989, 997 (Pa. Super. 2013) (quoting ***I.J.***, 972 A.2d at 11–12).

With respect to the "needs and welfare" analysis pertinent to Section 2511(a)(8) and (b), we have observed:

> [I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent. Moreover, only if a court determines that the parent's conduct warrants termination of his or her parental rights, pursuant to Section 2511(a), does a court "engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." Accordingly, while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by

Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1008–1009 (Pa. Super. 2008) (*en banc*) (citations omitted). "Section 2511(a)(8) does not require an evaluation of the remedial efforts of either the parent or DHS." *In re B.C.*, 36 A.3d 601, 611 (Pa. Super. 2012) (citing *C.L.G.*, 956 A.2d at 1007).

With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In his first issue on appeal, Father argues that the orphans' court abused its discretion in terminating his parental rights because incarceration alone is not sufficient to support termination under Section 2511(a)(8). Further, Father argues that the court incorrectly determined his earliest release date to be February of 2020. Rather, Father baldly asserts "his earliest release date could be in two years. . . ." Father's brief at 8. In

addition, Father argues that, while in prison, "he has participated in numerous programs to rehabilitate himself and make himself a better father." *Id.* at 7. Finally, Father argues that he "has used the resources available to him while incarcerated to continue his relationship" with the Children. *Id.* Upon review, we discern no abuse of discretion.

In its opinion accompanying the subject orders, the orphans' court found as follows:

> Father's convictions include Involuntary Manslaughter and Possession with Intent to Deliver in 2014, and multiple felony Retail Thefts ([in] 2004 (conspiracy), 2008, 2010, 2011 (conspiracy), and 2013). Father is presently in the midst of serving several state prison sentences arising out of convictions in multiple counties. His aggregate minimum date was the subject of much discussion through several of the hearings, and a Superior Court Opinion, but, at the hearing o[n] July 15, 2015, it was proven the Father's *earliest* aggregate minimum sentence date is February of 2020, almost five (5) years from now, when [A.K.S.] will be almost 11 years old and [D.B.S.] will be 12 years old.
>
> Neither Parent has remediated the conditions which led to CYS taking custody of the Children, and they have perpetuated their conduct. . . .

Orphans' Court Opinion, 7/27/15, at 3-4 (unpaginated) (emphasis in original) (citations to record omitted). The testimonial and documentary evidence supports the court's findings.

Father testified on direct examination that he was currently serving his sentence of incarceration for crimes arising in Columbia County in 2010. N.T., 7/15/15, at 5. He testified that next he will serve his sentence of incarceration for crimes arising in Snyder County, for which his minimum

sentence is one year. *Id.* at 6. Father testified on inquiry by the orphans' court:

> Q. So you have at least 54 months on the Columbia County sentences of possession of intent to deliver and involuntary manslaughter to be served after minimum of one year on the Snyder County sentence. So, now your 54 months goes up to 66 months. And you are presently in the middle of serving a Columbia County sentence on a parole revocation?
>
> A. Yes.

*Id.* Further, Father's counsel told the court that "[Father] indicates that as far as his calculations are [concerned,] February of 2020 is the minimum." *Id.* at 7-8. Based on this testimony, we reject Father's assertion that the orphan's court incorrectly determined his earliest release date to be February of 2020.

In addition, we reject Father's assertion that his incarceration is not sufficient to support the termination of his parental rights under Section 2511(a)(8). In *C.L.G.*, *supra*, this Court affirmed a decree terminating an incarcerated mother's parental rights pursuant to Section 2511(a)(8). In that case, the child was removed from the mother's care at birth due, in part, to the mother's illegal drug use. The mother cooperated with the FSP goals established by the child welfare agency. However, nearly one year after the child's placement, the mother pleaded guilty to a crime involving drugs, *inter alia*, stemming from her arrest while pregnant with the child, and she was sentenced to a term of incarceration for two to five years. Five months after the effective date of her criminal sentence, the child welfare

agency filed a petition for the involuntary termination of the mother's parental rights. The mother argued on appeal that the orphans' court improperly terminated her parental rights based solely on her incarceration. This Court disagreed. We concluded as follows:

> Mother's incarceration for drug offenses is a direct consequence of her drug involvement; therefore, she has failed to attain the FSP goal of resolving her "drug issues." Because Mother's conviction and subsequent term of incarceration derives directly from her "drug issues," it is a part of the original reasons for the removal of C.L.G. from Mother's care and forms a basis for the termination of Mother's parental rights pursuant to Section 2511(a)(8). Moreover, Mother's resulting incarceration was a foreseeable consequence to her involvement with illegal drugs. Regardless of whether Mother used drugs in the twelve months prior to the Agency's termination petition, the fact remains that, at the time of the termination hearing, Mother's drug related issues continued to impact C.L.G. and Mother's ability to care for C.L.G. Thus, it is the underlying drug issues which preclude Mother from properly caring for C.L.G., and not the incarceration, which is merely a consequence of Mother's inability to lead a life free from involvement with drugs.

**C.L.G.**, 956 A.2d at 1006-1007. Further, we emphasized that the child had spent half of her life in placement and needed permanence and stability. **Id.** at 1007.

Like in **C.L.G.**, Father's incarceration in this case until, at minimum, February of 2020, is a direct consequence of his relapse involving drugs, and a violation of his FSP goals. Father's illegal drug use, along with his criminal activity, was the primary reason for the Children's placement in August of 2010. We conclude, as in **C.L.G.**, that Father's current incarceration is a consequence of his "inability to lead a life free from involvement with drugs."

***Id.*** at 1007. Therefore, it is his underlying drug problem, and not his incarceration, that precludes Father from properly caring for the Children.

With respect to Section 2511(a)(8), the Children have been removed from Father's care since August 26, 2010, far in excess of the statutory minimum of twelve months. Further, the conditions that led to the Children's removal, *i.e.*, Father's drug use and criminal activity, continue to exist. Indeed, Father's reunification with the Children was not imminent at the time of the termination hearing. ***See I.J.***, ***supra***.

In addition, the Children have been in placement since they were one and two years old. At the conclusion of the termination hearing, A.K.S. was six years old, and D.B.S. was seven years old. By the time of Father's minimum release date, they will be ten and twelve years old, respectively. As such, we discern no abuse of discretion by the orphans' court in considering Father's period of incarceration in terminating his parental rights. ***See J.F.M.***, 71 A.3d at 997 (stating that Section 2511(a)(8) "implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities").

Although Father asserts that he has participated in programs while incarcerated to rehabilitate himself, and that he has used the resources available to continue his relationship with the Children, it is well-established that Section 2511(a)(8) "does not require an evaluation of the remedial

efforts of" Father. ***See B.C.***, ***supra.*** Further, on inquiry by the orphans' court, Father acknowledged that he has not seen the Children in nearly three years. N.T., 5/28/15, at 85. On cross-examination by counsel for CYS, Father testified that he has not had any contact with the Children "on a personal basis" during his incarceration. ***Id.*** at 66. Father implied that, when Heather Brennan was the CYS caseworker, which was at the time of the goal change hearing in August of 2014, he sent birthday and Christmas cards to the Children. ***Id.*** at 66. Thus, Father's assertions are meritless.

With respect to the final factor of Section 2511(a)(8), whether termination of Father's parental rights will serve the Children's needs and welfare, the testimony of the CYS caseworkers, Heather Getkin,[7] Brittany Foulds,[8] and Kerri Shaylor,[9] support the subject orders. Specifically, Ms. Shaylor testified as follows on redirect examination:

Q. Does either child ever ask about Mom and Dad?

A. No.

Q. Are you aware whether they have asked for photographs? Asked any questions? Anything with regard to Mom and Dad?

_____

[7] Ms. Getkin was the caseworker for this family from July to November of 2014. N.T., 5/28/15, at 7, 9.

[8] Ms. Foulds was the caseworker from December of 2014, to February of 2015. N.T., 5/28/15, at 18, 22.

[9] Ms. Shaylor was the caseworker at the time of the hearing.

A. No, they haven't.

*Id.* at 40.

Ms. Getkin testified that the Children have resided with their current foster mother since January of 2013. N.T., 5/28/15, at 10. All of the caseworkers testified that the Children are comfortable with their foster mother. *Id.* at 11, 26, 32. Ms. Getkin testified that the Children refer to their foster mother as "Mommy," and Ms. Foulds testified that they "call [their foster mother] Mom." *Id.* at 11, 25. Ms. Foulds and Ms. Shaylor testified that the Children are bonded to their foster mother. *Id.* at 26, 30. Ms. Shaylor testified that the foster mother is a pre-adoptive resource, and that the Children want to be adopted by her. *Id.* at 32-33. Ms. Shaylor further testified that the Children's physical, emotional, and developmental needs are being met in the foster home. *Id.* at 30. Based on the foregoing, we discern no abuse of discretion by the orphans' court in terminating Father's parental rights pursuant to Section 2511(a)(8). As such, Father's first issue on appeal fails. *See J.F.M.*, 71 A.3d at 997 (stating that "[t]his Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future").

In his second issue, Father argues that the orphans' court abused its discretion in involuntarily terminating his parental rights pursuant to Section 2511(b). Specifically, Father argues that the court did not consider the bond

between him and the Children and "the effect that severing that bond will have on" the Children. Father's brief at 10. Father argues that the record does not include "credible testimony related to the effect of the termination" of Father's parental rights on the Children. *Id.* at 11. Upon review, we discern no abuse of discretion.

The orphans' court found that the Children suffer from disruptive behavior disorder, and that D.B.S. also suffers from depressive disorder, which is supported by the testimony of Heather Brennan, the CYS caseworker who testified at the goal change hearing. Orphans' Court Opinion, 7/27/15, at 4 (unpaginated), N.T., 8/8/14, at 25-26. The court found that "[t]he Children are in need of a stable home and parent who is able to care for them, love them and raise them, and they are in need of that kind of home and relationship *now*. The Children have not seen Father since 2012. . . . They have a great opportunity to have a home and a devoted, functional parent in foster mother." *Id.* at 6-7 (emphasis in original). As detailed above, the testimonial evidence of the caseworkers supports the court's findings.

Further, because the record includes no evidence of a parent-child bond between Father and the Children, it was reasonable for the orphans' court to conclude that no bond exists. *See J.M.*, 991 A.2d at 324. In addition, it is well-established that, when evaluating a parental bond,

> the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well.

> Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P.*, 994 A.2d 1108, 1115-16 (Pa. Super. 2010) (internal citations omitted).   As such, Father's second issue fails.   The record evidence overwhelmingly demonstrates that terminating Father's parental rights will serve the "developmental, physical and emotional needs and welfare" of the Children pursuant to Section 2511(b).   Accordingly, we affirm the orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2016